UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| WILLIAM THOMPSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 3:10-CV-124 TLS |
| | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

On April 8, 2010, Plaintiff, William Thompson ("Thompson"), filed a complaint with this Court. On April 13, 2010, the matter was referred to the undersigned to conduct such proceedings as necessary to prepare a report and recommendation. On October 22, 2010, Thompson filed his opening brief asking the Court to reverse or remand the Commissioner's decision. On February 3, 2011, Defendant, Commissioner of the Social Security Administration ("Commissioner"), filed a response. On February 7, 2011, Thompson filed a reply. The following Report and Recommendation is based upon the record of this case that includes the pleadings, the motions, the administrative record, briefs of the parties, and the arguments of counsel.

**I.      PROCEDURE**

On September 7, 2006, Thompson filed his application for Disability Insurance Benefits. Thompson is insured for Disability Insurance Benefits through December 31, 2007. Thompson claims he is entitled to benefits pursuant to Title II of the Social Security Act. See 42 U.S.C. § 423.

On January 7, 2009, Thompson appeared at a hearing held remotely by an Administrative

Law Judge ("ALJ") claiming disability due to an elbow injury sustained during an arrest that occurred on June 25, 2006. On June 8, 2009, the administrative law judge ("ALJ") found that Thompson was not disabled. Thompson appealed the ALJ's decision to the Appeals Council. The Appeals Council denied review; and, as a result, the ALJ's decision became the Commissioner's final decision. 20 C.F.R. § 404.981; Fast v. Barnhart, 397 F.3d 468, 470 (7th Cir. 2005). Consequently, on April 8, 2010, Thompson filed a complaint in this Court seeking a review of the ALJ's decision.

This Court may enter a report and recommendation in this matter based on its referral order, 28 U.S.C. § 636(b)(1)(B), and 42 U.S.C. § 405(g).

## II. FACTUAL BACKGROUND

Thompson was 36 years old at his alleged disability onset date and 39 at the date of the ALJ's decision. He had a school education, past work experience as a warehouse worker and a gas station cashier. He also attended two years of college for accounting.

### A. Medical Evidence

On June 25, 2006, Thompson was brought to Dukes Memorial Hospital for assessment off his right elbow, which had been injured during his arrest. Thompson told Dr. Ronald Stukey that he had been injured two weeks earlier when police tackled him from a stoop in front of his home. Thompson was examined by Dr. Stukey, who noted that Thompson had no paresthesia[1] or numbness in his right hand, and that he had been using his elbow to some extent. Thompson exhibited tenderness to touch, significant pain, obvious swelling around the elbow, and a limited range of motion. X-rays showed a fracture dislocation and poor alignment. Dr. Stukey also

---

[1] Paresthesia is an abnormal sensation. Dorland's Illustrated Medical Dictionary 970 (26th Ed. 1985).

2

noted "a questionable fracture area" and told police that it was "somewhat suspicious that [Thompson] waited two weeks before seeking attention for this injury." Tr. 180. Dr. Stukey also told police that Thompson would be uncomfortable, but there was no risk to his life if he were incarcerated.

On August 7, 2006, after his release from prison, Thompson was examined by Dr. William Pohnert. Thompson told Dr. Pohnert that he had been "slammed around" by police and hurt his elbow. Thompson exhibited pain to touch, a limited range of motion in the elbow, and calcification[2] of the joint. Dr. Pohnert diagnosed right elbow old fracture dislocation and referred Thompson to a hand surgeon.

On August 16, 2006, Thompson underwent an initial evaluation with Dr. Timothy Dicke. Thompson said that his elbow pain was achy and deep and characterized his symptoms as mild to moderate. He indicated that he had functional difficulty with lifting and grasping. He reported that he was working full time and attending college. Dr. Dicke diagnosed Thompson with a right elbow contracture[3] with chronic dislocation after a terrible triad injury of radial head fracture, coronoid type III fracture, and elbow dislocation with onset of ossification[4]. Dr. Dicke recommended a CT scan. Dr. Dicke reviewed Thompson's CT scan and recommended surgery. Dr. Dicke also completed a patient status report, in which he indicated that Thompson was

---

[2] Calcification is the process by which organic tissue becomes hardened by a deposit of calcium salts within its substance. Dorland's Illustrated Medical Dictionary, 204.

[3] Contracture is a condition of fixed high resistance to passive stretch of a muscle resulting from fibrosis of the tissues supporting the muscles or the joints, or from disorders of the muscle fibers. Dorland's Illustrated Medical Dictionary, 302.

[4] Ossification is the formation of bone or of a bony substance; the conversion of fibrous tissue or of cartilage into bone or a bony substance. Dorland's Illustrated Medical Dictionary, 940.

3

currently unable to work for twelve months following surgery.

In December 2006, Dr. D. Neal, a state agency reviewing physician, opined that Thompson's impairment was non-severe because it did not meet the durational requirements of twelve months. Dr. Neal's assessment was affirmed by Dr. R. Fife, another state agency reviewing physician.

On January 25, 2007, Thompson underwent surgery on his elbow, and then began physical therapy. In February 2007, his elbow alignment was near normal and no new fracture or dislocation was identified. In March 2007, x-rays showed a stable alignment of the elbow. In April 2007, x-rays showed possible prosthetic loosening, but in July 2009, x-rays showed that Thompson's prosthetic in his elbow was stable.

B.  Hearing Testimony

Thompson testified that his right elbow was injured on June 25, 2006, when he was arrested on suspicion of driving without a license. He claimed that the police dislocated his arm by pulling on his handcuffs. After telling the police that he was in pain, Thompson was taken to the hospital where he was slammed into a wall and fractured his elbow. Thompson spent more than thirty days in prison. He underwent surgery in January 2007, spent three weeks in physical therapy and was arrested again, spending 45 days in prison. Thompson testified that after being released, he was told he needed another surgery on his elbow.

Thompson stated that as a result of his injury, he was unable to reach his face or shoulder with his right hand. He claimed that he had to learn to use his left hand to feed himself. He also stated that he was unable to lift more than five pounds with his right arm and experienced numbness and swelling, but that he could move his fingers without difficulty. He denied having

4

any other problems. Thompson did not know whether he could work from a computer with his right hand.

A vocational expert ("VE") also testified at the hearing. The VE testified at the hearing that (whatever VE testified at the hearing).

The ALJ also sent questions to another VE, Ray O. Burger, without objection by Thompson's counsel. The ALJ asked Burger to assume a hypothetical individual with Thompson's vocational profile and the ability to perform light work, but could not reach higher than the table or lift more than five pounds with his right arm. Also, the hypothetical individual could not crawl, climb, work around heights, and could balance, stoop, crouch, use controls with his feet, and occasionally kneel. Burger testified that the hypothetical individual could perform any unskilled occupations that exist in the national economy, and identified three such occupations: sales clerk, general office clerk, and office mail clerk, totaling more than 250,000 available jobs.

  C. <u>The ALJ's Determination</u>

The ALJ determined that Thompson suffered from status post surgery for fracture dislocation of his right elbow, and that as a result, he had not engaged in substantial gainful activity since June 25, 2006. However, the ALJ also concluded that the injury was not expected to last or had not lasted twelve consecutive months, and therefore could not be considered a severe limitation. The ALJ also determined that even if the elbow injury lasted more that twelve months, Thompson would not be disabled because he was capable of performing light work that existed in significant numbers in the national economy.

In forming her opinion about Thompson's residual functional capacity ("RFC"), the ALJ

relied on treatment notes from Thompson's physical therapy that indicated that he had improved the range of motion in his elbow and that he nolonger needed pain medication. Although a note from OrthoIndy, Thompson's orthopedic health care provider, indicated that he would be unable to work for up to twelve months, the ALJ disregarded that opinion because it was not signed by a physician and therefore was not opinion evidence by a doctor.

## III. ANALYSIS

### A. Standard of Review

The standard of review for an ALJ's decision is whether it is supported by substantial evidence and free of legal error. See 42 U.S.C § 405(g); Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005); Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005); Golembiewski v. Barnhardt, 322 F.3d 912, 915 (7th Cir. 2003). Substantial evidence means such relevant evidence as a reasonable mind might accept to support such a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1972). A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. Haynes, 416 F.3d at 626. An ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003). However, an ALJ's legal conclusions are reviewed *de novo*. Haynes, 416 F.3d at 626.

### B. Thompson's Motion for Summary Judgment

To be entitled to benefits under 42 U.S.C. §§ 423, 1321a, Thomspons must establish that he was "disabled." See 42 U.S.C. § 423(a)(1)(D). The Social Security Act defines "disability" as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. The ALJ must consider whether: 1) the claimant is presently employed, 2) the claimant has a severe impairment or combination of impairments, 3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity, 4) the claimant's residual functional capacity leaves him unable to perform his past relevant work, and 5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920; Briscoe, 425 F.3d at 352. If the ALJ finds that the claimant is disabled or not disabled at any step, he may make his determination without evaluating the remaining steps. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If there is an affirmative answer at either step three or step five, then there is a finding of disability. Briscoe, 425 F.3d at 352. At step three, if the impairment meets any of the severe impairments listed in the regulations, the impairment is acknowledged by the Commissioner. See 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. app. 1, subpart P, § 404. However, if the impairment is not so listed, the ALJ assesses the claimant's RFC, which in turn is used to determine whether the claimant can perform her past work under step four and whether the claimant can perform other work in society under step five. 20 C.F.R. § 404.1520(e). The claimant bears the burden of proof on steps one through four, but the burden shifts to the Commissioner at step five. Id.

Thompson has objected to the ALJ's opinion because the VE that testified at the hearing gave a list of jobs that did not match the list of jobs provided by Ray O. Burger, which was incorporated into the ALJ's opinion. Thompson also argues that the ALJ erred in making her

7

RFC determination because she failed to consider his limitations from medications, as well as failed to consider the number of times he visited a doctor in a period of ninety days.

        1.        <u>VE Testimony</u>

Thompson argues that the ALJ erred by submitting questions to Ray O. Burger after the VE testified at the hearing because Burger's responses to the ALJ's hypothetical questions were different than the VE's responses at the hearing.

The record indicates that Bonnie Gladden, a VE, was present at the hearing held on January 7, 2009. Strangely, the record does not include Gladden's testimony. The record does include, however, Burger's written responses to the ALJ's inquiries. Burger stated that someone with Thompson's limitations would be able to work as a sales clerk, general office clerk, or mail clerk.

The ALJ did not err by incorporating Burger's written responses instead of Gladden's. First, the ALJ was not required to give deference to one VE over another. <u>See</u> 404.1560(c) (explaining that the ALJ must present evidence that the claimant can work, there is no requirement that the evidence come from a VE at the hearing). The ALJ supplied a copy of her inquiries to Thompson's counsel, who made no objections. Also, whether Gladden had a different list of jobs is immaterial because she still provided a list of jobs indicating that Thompson was not disabled. <u>See</u> Doc. No. 27 at 2. As a result, the ALJ did not commit error by relying on Burger's statements in forming her opinion.

        2.        <u>The ALJ did not err in making her RFC determination because she properly considered Thompson's limitations.</u>

Thompson argues that the ALJ erred in the determination of his RFC by not considering his limitations that resulted from his medication and by failing to consider the number of days he

8

would miss for doctor visits. However, a review of the record shows that the ALJ did not err because there was no evidence to support the existence of these limitations.

First, the ALJ considered the limitations caused by Thompson's medications. The ALJ noted that from June 25, 2006 to February 2007, Thompson had only been injured for a period of nine months, which falls short of the twelve-month durational requirement. In other words, Thompson's limitations from his medications may have been severe during the period from June 25, 2006, to February 2007, but that period is not long enough to be considered a severe limitation under the Social Security regulations. Furthermore, the ALJ noted that treatment notes from February 2007 showed that Thompson was no longer taking pain medication at all. Because he was no longer taking any medications, there was no need to consider the limitations associated with them after February 2007. As a result, the ALJ's consideration of Thompson's limitations from his medications is supported by the record.

For similar reasons, the ALJ did not err in considering the number of doctor visits Thompson required in a ninety day period. During the nine months that Thompson was severely injured, he visited doctors and physical therapists frequently. However, following April 2007, Thompson's condition had improved such that the frequency of his treatment and therapy declined. Following April 2007, Thompson went more than two years without visiting a doctor for his elbow. Thus, the limitations caused by Thompson's frequent doctor visits lasted from June 25, 2006, to, at the latest, April 2007, again falling short of the twelve month durational requirement. Thus, the ALJ's consideration of that limitation is also supported by the record. As a result, the ALJ did not err in her determination of Thompson's RFC.

**IV.  CONCLUSION**

9

Because the ALJ properly considered the testimony of Ray O. Burger, as well as Thompson's limitations from medications and doctor visits, the ALJ's determination is supported by substantial evidence on the record. Therefore, this Court **RECOMMENDS** that Thompson's motion for remand should be **DENIED** [Doc. No. 1].

> **NOTICE IS HEREBY GIVEN that within ten (10) days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER**.
>
> **SO ORDERED.**

Dated this 18th day of March, 2011.

                                                s/Christopher A. Nuechterlein
                                                Christopher A. Nuechterlein
                                                United States Magistrate Judge